UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| CURTIS L. PARKER, | ) | No. ED CV 11-00428-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.    Whether the finding that Plaintiff retained the capacity to

perform a slightly reduced range of light work is based on a legally proper analysis, including a proper rejection of the residual functional capacity assessments of examining physician Dr. Nassir;

2.    Whether the finding that Plaintiff's testimony regarding the nature and extent of his limitations is not credible is supported by substantial evidence; and

3.    Whether the Administrative Law Judge ("ALJ") erred at Step Five in finding that Plaintiff is not disabled without obtaining the testimony of a vocational expert.

(JS at 6.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY ASSESSED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

In his first issue, Plaintiff asserts that in assessing his residual functional capacity ("RFC"), the ALJ improperly rejected or discounted the opinion of examining physician Dr. Nassir.  For reasons to be set forth, the Court disagrees.

The ALJ determined that Plaintiff has a severe impairment in his gastrointestinal system, but that this impairment has never met or equaled a Listing, and has never deprived him for any twelve-month period of the RFC for light work activity.  The ALJ provided restrictions which would limit Plaintiff to occasional stooping, kneeling, crouching or crawling, and precluded him from climbing

ladders, ropes or scaffolds. (AR 25.)

Plaintiff received a one-time examination from Dr. Nassir on April 29, 2009, which resulted in Dr. Nassir completing a "Multiple Impairment Questionnaire" (AR 473-480), and also providing a summary and diagnostic report based on that same examination. (AR 485-487.) Dr. Nassir also agreed that Plaintiff can perform lifting and carrying exertional activities which are essentially consistent with light work (see AR at 476), but nevertheless determined that his multiple problems prevent him from performing required daily work activities. (AR 47.)

A brief summary of Plaintiff's medical history, particularly in respect to his gastrointestinal problems, is helpful to this discussion.  As early as April 2004, Plaintiff was found to have evidence of diverticulitis and related colon problems.  These issues were acknowledged by the ALJ and are supported by the record. (AR 26, 183-84, 490-516.)

Plaintiff's treating physician is Dr. Yu, and his gastrointerologist is Dr. Wali. (AR 26, 112, 343-465, 467.) Plaintiff was treated for urinary tract infections twice in 2005 and once in 2006. (AR 26, 467.)  He received a CT scan in January 2006 which indicated inflamation in his colon and some thickening of the bladder wall adjacent to the colon. (AR 553-555.)  Plaintiff was then referred by Dr. Yu to Dr. Wali.  Based upon examination, Dr. Wali diagnosed that Plaintiff suffered from diverticulitis and colovesical fistula. Plaintiff was admitted for elective repair and resection of the colon. (AR 26, 446-47.)  Plaintiff's physical examination findings were essentially normal, and neurologically he was found to be grossly intact. (Id.)  After surgery, he had an uneventful recovery and was

given a colonostomy, which was performing successfully. (AR 445.)

As on June 2006, a colonoscopy indicated that there were no complications and the surgical area had healed. (AR 443-44.) In July 2006, Plaintiff had surgery to close the colostomy which Dr. Wali indicated had been successful. (AR 433-38.) A few days later, he was admitted to the hospital with a ruptured colon and other issues, and received surgery which was also successful. He received a colostomy bag on the ileum (ileostomy). (AR 274-337.)

Plaintiff followed up with Dr. Wali in August 2006 and was found to be doing very well; the ileostomy was working, and his abdominal wall wound had completely healed. (AR 389.) He was walking and had normal lab results. On October 31, 2006, a colonoscopy performed by Dr. Wali indicated that Plaintiff still had some diverticulosis but no other abnormal findings were reported. (AR 381, 385.) Thereafter, in March 2007, Dr. Wali performed additional surgery on Plaintiff's colon, which was thereafter followed by closure of the ileostomy the next day. (AR 367-78, 382-83.) Before admitted for surgery in March 2007, Plaintiff indicated that he was completely independent in all of his normal every day activities and ambulated without an assistive device. (AR 382.) He had an uneventful post-operative recovery. Although he shortly thereafter complained of some abdominal pain, he was able to elevate his extremities but refused to complete any further function testing. (Id.)

A month later, in May 2007, Plaintiff received a comprehensive physical examination ("CE") from Dr. To, which included clinical hepatic and metabolic function testing. (AR 26, 216-22.) Dr. To provided a summary of Plaintiff surgical history, and his physical examination findings were essentially normal. Dr. To opined that

Plaintiff could do light work, including a stand/walk option for up to six hours in an eight-hour day with no sitting restrictions, no requirement of assistance to walk, working at heights on a frequent basis, no restriction on fine or gross manipulative movement, a limitation to occasional postural activities, and a restriction against work with heavy or moving machinery. (AR 219-220.)

Non-examining physician Dr. Wahl reviewed Plaintiff's medical records as well as Dr. To's findings (AR 228-30), and then completed a Physical Functional Capacity Assessment (AR 223-27), in which he opined that Plaintiff could lift and carry up to ten pounds frequently, 20 pounds occasionally; stand/walk for up to six hours, and sit for up to six hours in an eight-hour workday; no limitation on fine or gross manipulation or pushing/pulling; no limitation on postural activity; no seeing or hearing limitations. (AR 224-27.)

The ALJ rejected or depreciated Dr. Nassir's opinion for two principal reasons.  First, he found that it was inconsistent with his own examination findings. (AR 27; 486.)   The ALJ also found Dr. Nassir's opinion to be inconsistent with the opinions of both Dr. To and Dr. Wahl. (<u>Id</u>.)

Plaintiff's principal contention is that the ALJ's rejection of Dr. Nassir's opinion is not supported by the requisite "specific and legitimate" reasons supported by substantial evidence in the record. <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995); <u>Lester v.</u> <u>Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).  Essentially, according to Plaintiff, the ALJ simply disagreed with Dr. Nassir's opinion, but gave no reason for rejecting it other than the fact that it was contradicted in part by the opinions of Dr. To and Dr. Wahl.

The ALJ gave further reasons.  For one, in rather dramatic

language, he considered Dr. Nassir's opinion to be "egregiously exaggerated, accommodative, and indulgent." (AR 27.)    Plaintiff ignores other portions of the ALJ's opinion which provide a more low key analysis of Dr. Nassir's opinion. (See AR 24-25.) For example, he refuted Dr. Nassir's statements in the multiple impairment questionnaire that Plaintiff had a history of asthma with chronic dyspnea, noting that a week later at the hearing before the ALJ, Plaintiff denied any current treatment for asthma by way of oral medications or an inhaler. (Id.) Further, while Plaintiff argues that Dr. Nassir's opinion is much more recent in time than that of Dr. To, the fact is that Dr. To did examine Plaintiff after Plaintiff received surgical intervention in 2006 and early in 2007.  Further, Dr. To was informed as to Plaintiff's medical and surgical history.  It is also the fact that Dr. Nassir did not provide any objective findings to support his opinion.  See 20 C.F.R. § 416.929.  Dr. Nassir's opinion cannot be fully equated with a "check the box" form which may be disfavored if not supported by objective evidence (see Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)), but nevertheless, the lack of any clinical notes renders Dr. Nassir's opinion much less credible, and certainly, entitled to less weight, as per the ALJ's Decision.

The ALJ's analysis is sufficient for the Court to substantiate his conclusions with regard to Plaintiff's RFC.  The fact that Dr. Nassir was retained by Plaintiff's counsel, however, led the ALJ to depreciate Dr. Nassir's opinion as one that, essentially, was rendered without objectivity merely because of the fact that Dr. Nassir was retained by counsel.  By itself, this is a troubling conclusion.  The mere fact that counsel retained Dr. Nassir to examine Plaintiff, and even the ALJ's observation that the same counsel has previously

retained this doctor for other cases, is an insufficient basis to establish that the doctor is biased and rendered a less than objective opinion for financial reasons.    This Court has made similar observations in other cases, and has suggested that the Commissioner should not validate such assessments by administrative law judges unless their conclusions are corroborated by actual evidence of bias. Indeed, in this case, the Court notes that the Commissioner has not validated the ALJ's reasoning.

For the foregoing reason, the Court finds no merit in Plaintiff's first issue.


**II**

**THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

In Plaintiff's second issue, he asserts that the ALJ erred in depreciating his credibility regarding self-reporting of his symptoms from his impairments.

It is up to the ALJ to make a credibility finding based on sufficiently specific findings. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).    Once a claimant produces objective medical evidence of impairments which could cause pain, the ALJ can only reject that testimony by offering specific, clear and convincing reasons. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, Plaintiff asserts that the ALJ failed to offer any specific reasons sufficient to establish, within the legal parameters noted above, that Plaintiff would not be found credible. (JS at 24.)    As will be noted, while it may be correct that some of the reasons cited by the ALJ might not, in and of themselves, be sufficient to rebut

Plaintiff's credibility, the Court finds that there are sufficient reasons in the record which do substantiate the ALJ's finding.

Among these sufficient reasons are Plaintiff's claim, as set forth in his January 2007 application, that he had been disabled and unable to work beginning in June 2003. (AR 96.)  As the ALJ noted, there was record evidence that Plaintiff had worked in 2007 after the filing date and again in 2008. (AR 27; see also AR 24, 102.)  This work did not amount to the level of substantial gainful activity but, the ALJ noted, "it still shows the [Plaintiff] had the ability to carry on a significant amount of effort for gain." (AR 24.)  This finding is substantiated by the regulations. (See 20 C.F.R. § 416.971.)

The ALJ also noted that Plaintiff has "asserted multiple problems far beyond those established in the record." (AR 27-28, 34-40.)  As noted by the ALJ, Plaintiff claimed that he had had his toenails removed, but this appears to be due to a toenail fungus which the ALJ observed could be generally treated topically or otherwise, and in any event, the loss of toenails was not functionally limiting as Plaintiff claimed. (AR 28.)  While the Court agrees with Plaintiff that the ALJ erred in concluding that Plaintiff's complaints about back pain were not substantiated by the record, on the other hand, it is correct that, as the ALJ observed, Plaintiff's allegations that his limitations were due to asthma were not so supported. (AR 24-25, 28.) Plaintiff self-reported to Dr. Nassir that he had a history of asthma with chronic dyspnea (see AR at 485), but this is not in fact substantiated by the medical record.  Finally, Plaintiff's own self-reporting regarding his gastrointestinal problems was regarded as being inconsistent with the objective evidence.  As noted, before he

had surgery in March 2007, Plaintiff indicated that he had been completely independent in his every day activities.  Shortly after surgery, Plaintiff walked with a normal gait and did not need an assistive device.  These observations are inconsistent with the level of Plaintiff's complaints regarding his subjective symptoms.

All in all, the Court cannot conclude that the ALJ's interpretation is unreasonable; rather, it is supported by substantial evidence in sufficient part to not merit a reversal.

### III

### THE ALJ PROPERLY CONCLUDED THAT PLAINTIFF WAS NOT DISABLED
### AT STEP FIVE OF THE SEQUENTIAL EVALUATION PROCESS

The ALJ did not utilize a vocational expert ("VE") in this case, and Plaintiff asserts that was error.  The ALJ found that Plaintiff was capable of adjusting to "other work." (AR 28-29.)  In the decision, the ALJ noted that the Medical-Vocational Guidelines (known as the "Grids") directed this finding for a person meeting Plaintiff's RFC, his age ("younger individual"), his education ("at least high school"), and his work experience ("shipping and receiving clerk"). (AR 28-29.)

In cases where a person can perform all or substantially all of the exertional demands at a given level of exertion, the Grids direct a conclusion of either "disabled" or "not disabled" depending upon the specific vocational profile. (See SSR 82-41; 20 C.F.R. pt. 404, subpart app. 2.)

Here, the ALJ made the correct assertion regarding vocational factors of age, education and work experience, and Plaintiff does not contest that.  Rather, he contests the ALJ's use of the Grids to

1  indicate that Plaintiff was not disabled.

2      Pursuant to clearly established law, the Grids are utilized to
3  evaluate claimants who assert both exertional and non-exertional
4  limitations, but the decision maker may not use the Grids to direct a
5  finding when the non-exertional limitations are sufficiently severe as
6  to significantly limit the range of work permitted by the claimant's
7  exertional limitations. See Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th
8  Cir. 2007).  The existence of non-exertional limitations, however,
9  does not automatically preclude application of the Grids.  If the ALJ
10 determines that the non-exertional limitations do not significantly
11 limit the range of work permitted by the exertional limitations, the
12 Grids may still be relied upon.  See Desrosiers v. Sec'y of Health &
13 Human Services, 846 F.2d 573, 577 (9th Cir. 1988); Tackett v. Apfel,
14 180 F.3d 1094, 1102 (9th Cir. 1999).

15     In this case, the ALJ did make a finding that Plaintiff's non-
16 exertional limitations had little or no effect on the occupational
17 base of unskilled light work as represented by the Grids. (AR 29.)
18 Plaintiff complains that this is an unsupported conclusion, but there
19 is no evidence that the ALJ failed to thoroughly consider Plaintiff's
20 non-exertional limitations in finding that they did not diminish
21 Plaintiff's exertional capacities.  In any event, the ALJ's decision
22 is supported by the alternative finding that even if Plaintiff's non-
23 exertional limitations did preclude the range of work under the Grids,
24 Plaintiff could still perform the representative occupations
25 identified by the State Agency VE. (AR 29, 144-46.)  The ALJ was
26 entitled to rely upon relevant occupational codes identified in the
27 Dictionary of Occupational Titles (see 20 C.F.R. § 416.966(d)).

28     Ultimately, only where there are significant and sufficiently

severe non-exertional limitations which cannot be accounted for in the Grids must the ALJ call a VE.   See Hoopai, 499 F.3d at 1076.   The Court does not find that in this case, based on the record, the ALJ was required to call a VE based on the significance of existing non-exertional limitations.

　　　For the foregoing reasons, the Court finds no merit in Plaintiff's third issue.

　　　The decision of the ALJ will be affirmed.   The Complaint will be dismissed with prejudice.

　　　**IT IS SO ORDERED.**


DATED: December 2, 2011 　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　 VICTOR B. KENTON
　　　　　　　　　　　　　　　　 UNITED STATES MAGISTRATE JUDGE